**IN THE IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.  SHERRY THIBODEAU, | ) | |
| | ) | |
| Plaintiff, | ) | CIV-25- |
| | ) | |
| v. | ) JURY TRIAL DEMANDED | |
| | ) ATTORNEY LIEN CLAIMED | |
| 1.  ACCURATE ENVIRONMENTAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW THE PLAINTIFF**, Sherry Thibodeau, and pleads her claims as follows:

## PARTIES

1. The Plaintiff is Sherry Thibodeau, an adult resident of Payne County, Oklahoma.

2. The Defendant is Accurate Environmental, LLC, a domestic limited liability company doing business in Payne County, Oklahoma.

## CLAIMS & VENUE

3. The Plaintiff asserts claims for wrongful termination based on pregnancy and termination in retaliation for opposing pregnancy discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, *et seq.*

4. Jurisdiction over Plaintiff's federal claims is found in 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367. The conduct giving rise to this action occurred in Payne county, Oklahoma, which is a county within the United States District Court for the Western District of Oklahoma.

1

## STATEMENT OF FACTS

5. The Defendant employed at least fifteen employees for at least twenty weeks of the current or proceeding calendar year such that it is an employer as defined by Title VII of the Civil Rights Act.

6. The Plaintiff was employed by the Respondent on two separate occasions.

7. Plaintiff's second period of employment began around 2012.

8. Plaintiff worked in the position of Organic Chemistry Analyst, Analyst in the Organic Semi-Volatile Department, or a similar title.

9. Some of the job duties of Plaintiff's position included working in a lab which exposed her to multiple dangerous chemicals including chemicals Plaintiff understood could cause serious complications for an unborn child including spontaneous abortions.

10. Around May 20, 2024 Plaintiff notified her supervisor, Catherine Chance (QA/QC, Organics Lab Technical Manager), that she was pregnant.

11. Plaintiff asked Ms. Chance for the accommodations of not performing duties that exposed her to these dangerous chemicals.

12. Defendant retaliated against the Plaintiff by changing her from a salaried employee with a set wage to an hourly employee without a consistent salary.

13. Ms. Chance told Plaintiff she was being changed from salary to hourly "due to problems we had with previous pregnant employees", and stated that there was one employee who had "trouble making up her hours" because "she was pregnant".

14. Ms. Chance immediately began cutting Plaintiff's hours, resulting in wage loss to the Plaintiff.

15. In mid-August 2024 Plaintiff began complaining about being discriminated against because of her pregnancy.

16. For instance, around August 15, 2024 Plaintiff sent an email to Ms. Chance seeking an explanation as to "why my salaried position was revoked after I made [Ms. Chance] aware of my pregnancy".

17. Around August 15, 2024 the Plaintiff was called into a meeting with Dr. Ali Fazel (Defendant's owner) and Danny Chance (another supervisor and Catherine Chance's husband). The following conversation occurred during this meeting, listed in order in which the statements were made:

    A. Dr. Fazel told Plaintiff he called the meeting to talk about the email Plaintiff sent to Ms. Chance identified at Para. 16;

    B. Dr. Fazel told Plaintiff he did not "like the tone" of Plaintiff's email;

    C. Dr. Fazel told Plaintiff that she was moved from salary to hourly "for [Plaintiff's] benefit" because she was pregnant;

    D. Plaintiff opposed pregnancy discrimination by telling Dr. Fazel that moving her to hourly and reducing her hours because of her pregnancy was "prohibited by the EEOC" and that Plaintiff believed she had a pregnancy discrimination claim with the EEOC;

    E. In response to Plaintiff's statement identified in Para. 17(D), Dr. Fazel asked "what's the EEOC". Plaintiff explained that the EEOC was the "Equal Employment Opportunity" commission.

    F. In response to Plaintiff's statement at Para. 17(E), identifying the EEOC as the Equal Employment Opportunity Commission, Dr. Fazel stated that the EEO "doesn't apply to us" because it was just "busy work".

18. After the meeting, Defendant drastically reduced her hours to less than half of the hours she had been working before disclosing her pregnancy and opposing pregnancy

discrimination. Additionally, Defendant began cancelling Plaintiff's assigned work shifts either without advance notice or only with a last-minute communication.

19. Additionally, Ms. Chance began near-constant criticism of the Plaintiff, demanding Plaintiff explain why she could not get her job duties completed, even though the Defendant had cut her hours and required Plaintiff to complete the same amount of job duties in less than half of the time period she was previously allowed.

20. Ms. Chance was extremely hateful and demanding, causing Plaintiff to cry and go home in tears.

21. As a result of the Defendant's conduct, the Plaintiff began experiencing negative health effects including an increase in stress, anxiety and blood pressure.

22. The Defendant's conduct created a work environment that was so intolerable that Plaintiff had no choice but to resign her employment, resulting in a constructive discharge in January 2025.

23. As a direct result of Defendant's conduct – including its reduction in Plaintiff's hours and pay, changing Plaintiff's wages from salary to hourly, and Defendant's creation of an environment resulting in a constructive discharge – the Plaintiff has suffered, and continues to suffer, wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm including worry, sadness, frustration, embarrassment, stress, anxiety and similar unpleasant emotions.

24. At the least, Defendant's conduct was motivated by her pregnancy, and/or was because of her pregnancy and/or her opposition to pregnancy discrimination.

25. The Plaintiff has exhausted her administrative remedies by timely filing an EEOC charge of discrimination around August 16, 2024 and amending her charge around January 24, 2025 to supplement with additional acts of discrimination and retaliation lead to and

4

including the constructive discharge.  The EEOC issued Plaintiff her right to sue letter around July 31, 2025 and Plaintiff received such letter thereafter.  This complaint is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

## COUNT I

Plaintiff incorporates the above paragraphs and further alleges:

26.    Discrimination on the basis of pregnancy – including through reduction in hours, reduction in pay and/or termination (constructive discharge), violates Title VII of the Civil Rights Act.

27.    Under this Count the Plaintiff is entitled to her wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress damages.

28.    The Defendant's conduct was willful or, at the least, in reckless disregard of Plaintiff's rights such that she is entitled to an award of punitive damages.

29.    Plaintiff is also entitled to equitable relief including reinstatement, a declaration that Defendant's conduct violated Title VII, and an award of attorneys' fees and costs.

## PRAYER

**WHEREFORE**, the Plaintiff requests this Court enter judgment in her favor and against the Defendant and grant her all compensatory damages suffered, together with all damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS 5TH DAY OF SEPTEMBER 2025:**

HAMMONS, HURST & ASSOCIATES


s/ Amber L. Hurst
Amber L. Hurst OBA No. 21231
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Email: amber@hammonslaw.com
        katie@hammonslaw.com
*Counsel for Plaintiff*